## HENDRY v. GALVIN-WOHL, et al.

Industrial Commission.

February 13, 1952.

Jack R. Courshon of Courshon & Courshon, Miami Beach, for claimant.

A. Judson Hill of Brown, Dean & Hill, Miami, for employer and insurance carrier.

JAMES R. KNOTT, Deputy Commissioner.

On September 19, 1951 the claimant, Marvin Hendry, contracted anthrax in the course of his employment as a ranch foreman for Galvin-Wohl, near Hollywood, Florida. His average weekly earnings at the time he contracted the disease were $54.23. The claimant's symptoms appeared after physical contact with an infected dead cow on his employer's premises. The evidence established that his condition constituted an occupational disease within the meaning and intendment of the Act. He was temporarily totally disabled by the disease from September 28, 1950 to November 9, 1951. The effects of his condition still persist to some extent, and according to the medical evidence there is a possibility that a degree of permanent partial disability may result from the disease. He is still undergoing medical treatment, having heretofore incurred substantial expenses for hospitalization and remedial treatment and care.

The compensation insurance carrier for the employer denies liability for the benefits of the Act on the ground that the employer had not properly waived the exemption provided in the law for "agricultural farm labor"—the type of work in which claimant was engaged at the time of contracting the disease mentioned. The validity of that defense as to the carrier constitutes the issue to be decided here.

Section 440.02(1), Florida Statutes 1951, exempts "agricultural farm labor" from the provisions of the workmen's compensation law, but it is provided in section 440.04(2):

> Every employer having in his employment any employee not included in the definition "employee" or excluded or exempted from the operation of this chapter may at any time waive such exclusion or exemption and accept the provisions of this chapter by giving notice thereof as provided in §440.05, and by so doing be as fully protected and covered by the provisions of this chapter, as if such exclusion or exemption had not been contained herein.

And in section 440.05.:

> *Notice of non-acceptance and waiver of exemption.*—Notice of non-acceptance of this chapter and notice of waiver of exemption heretofore referred to shall be given in accordance with the following provisions:
>
> (1) Every employer who elects not to accept the provisions of this chapter or who waives such exemption as the case may be, shall post and keep posted in a conspicuous place or places in and about his place or places of business typewritten or printed notices to such effect in accordance with a form to be prescribed by the commission. He shall file a duplicate of such notice with the commission.
>
> (3) Such notice shall be given thirty days prior to any injury, provided, however, that if the injury occurs less than thirty days after the date of employment, such notice given at the time of employment shall be sufficient notice.

The evidence established that the employer, through Thomas M. Wohl, procured workmen's compensation insurance with Iowa Mutual Casualty Co. through the insurance agency of Gaynor-Gordon, Inc. of Miami Beach for a period of one year beginning July 1, 1951. At the time of applying for the policy, Wohl advised Milton M. Gaynor, of that agency, that he desired the policy to cover all the employees of the firm, including those engaged in farm or ranch work, as well as those employed in other and non-exempt lines of business operated by the employer. In compliance therewith, Gaynor-Gordon, Inc. wrote to the employer on June 15, 1951, as follows:

> About your inquiry on the workmen's comp. and liability policies, we wrote the policies in the same manner as the previous carrier, the Bituminous Casualty Co., wrote theirs. Your farm labor, foreman, and

any other employees you may hire will be picked up automatically on audit in exactly the same manner as your previous Bituminous audits.

Subsequently, Gaynor-Gordon, Inc. was furnished by the employer with the audit customarily required as a basis for determining the insurance premiums due under the policy, which audit showed farm labor as among the various types of work of employees to be covered under the policy. Pursuant thereto, the employer's premium rate became based upon inclusion of insurance coverage of farm labor—including the claimant's job as ranch foreman.

In accordance with the custom of Gaynor-Gordon, Inc. as insurance agents, Gaynor furnished the employer in June, 1951 with a printed notice of waiver of exemption, which was posted by the employer in the firm office located on the premises of Wohl's residence, reading as follows:

> The undersigned employer hereby gives notice that he has secured the payment of compensation in accordance with the provisions of the Florida Workmen's Compensation Act; that he waives exemption from the operation of the Act of any employment not included therein by Section 2; and that he accepts the provisions of the Act with respect to any such exempted employment. Such Compensation has been secured by insuring with Iowa Mutual Casualty Company.

A duplicate of the employer's notice of waiver of exemption was not filed with the commission. Gaynor testified that following the usual custom of his agency he assumed the responsibility of attending to the filing of a duplicate of such notice with the commission; that in this case, he was advised by an agent of another insurance company, with which Galvin-Wohl had carried their compensation insurance the preceding year, that a similar notice had previously been filed with the commission on behalf of the employer, and that consequently he, Gaynor, had deemed it unnecessary to file such notice with the commission. After the occurrence of claimant's injury, it developed that the agent who so advised Gaynor had been in error in his statement.

The question presented here may be stated as follows: Where an employer has workmen's compensation insurance covering employees whose work is exempt from the Act, but through the fault of the agency representing the carrier fails to waive his exemption, may the carrier successfully contest liability for compensation benefits on account of the subsequent injury of one of said exempt employees?

The question should be answered in the negative. The carrier is estopped to raise such a defense, under the circumstances given. For this reason, it must be held that the claimant is entitled to an award of the benefits hereinafter provided.

4

Upon consideration, it is hereby ordered as follows:

1. The insurance carrier shall pay the claimant compensation at a rate of $32.54 weekly for the period of his temporary total disability extending from September 28, 1951 to November 9, 1951, less the 4-day waiting period provided by law. The carrier's draft for the aggregate amount of compensation due for that period shall be made payable jointly to the claimant and to Galvin-Wohl, his employer, in consideration of the advancements heretofore made by the employer to the claimant during his said temporary disability.

2. The carrier shall pay the expense of the claimant's nursing care and laboratory fees aggregating $514, draft therefor to be made payable to Galvin-Wohl, in reimbursement for their advancement of said expenses.

3. The carrier shall pay to Hollywood Hospital the sum of $661, representing the expenses of the claimant's hospitalization, and shall pay to Dr. Bernard Milloff the sum of $375 for medical treatment necessitated by the claimant's condition.

4. The carrier shall furnish to the claimant such further medical and other remedial treatment and care as the process of his recovery may require.

5. The carrier shall pay to Courshon and Courshon, Esqs., the sum of $300 for their legal services on behalf of the claimant.

6. The question of the existence and degree of permanent partial disability of the claimant cannot be determined at this time, and therefore is not considered in this award.